726 F.2d 852
 UNITED STATES of America, Appellee,
v.
Claudius SMITH, Defendant, Appellant.
UNITED STATES of America, Appellee,
v.
Franklin A. SHEARER, Defendant, Appellant.
UNITED STATES of America, Appellee,
v.
Jessie WOODBURY, Defendant, Appellant.
UNITED STATES of America, Appellee,
v.
Charles ROMANO, Defendant, Appellant.
UNITED STATES of America, Appellee,
v.
Carlos TORRES, Defendant, Appellant.
UNITED STATES of America, Appellee,
v.
Veronica DeJESUS, a/k/a Ronnie, Defendant, Appellant.
UNITED STATES of America, Appellee,
v.
Edward GABREE, Defendant, Appellant.
UNITED STATES of America, Appellee,
v.
Joanne AMADO, a/k/a "JO", Defendant, Appellant.
UNITED STATES of America, Appellee,
v.
Fay HULLUM, Defendant, Appellant.
UNITED STATES of America, Appellee,
v.
Kathy AMADO, a/k/a "Kim", Defendant, Appellant.
UNITED STATES of America, Appellee,
v.
Clarence VARISTE, Defendant, Appellant.
UNITED STATES of America, Appellee,
v.
Lanier GRIFFIN, a/k/a "Jitters", Defendant, Appellant.
UNITED STATES of America, Appellee,
v.
Rhonda WASHINGTON, Defendant, Appellant.
UNITED STATES of America, Appellee,
v.
Edward DeJESUS, a/k/a "Tony", Defendant, Appellant.
UNITED STATES of America, Appellant,
v.
Norman AMADO, Defendant, Appellee.
UNITED STATES of America, Appellee,
v.
Mattie LEDBETTER, a/k/a "Theresa", Defendant, Appellant.
 Nos. 82-1678 to 82-1687, 82-1689 to 82-1691, 82-1732,
83-1613 and 83-1686.
 United States Court of Appeals,
First Circuit.
 Jan. 17, 1984.
 
 James W. Lawson, Boston, Mass., with whom Lillian A. Wilmore, Oteri, Weinberg & Lawson, Walter Prince, Brown & Prince, William Homans, Homans, Hamilton, Dohmen & Marshall, David P. Twomey, Dwyer & Murray, Boston, Mass., Brian T. Callahan, Medford, Mass., John Bonistalli, Carhart & Bonistalli, George Gormley, Alice A. Hanlon, Richard Glovsky, Hanify, King & Glovsky, Alan D. Rose, Joseph Keefe, Nutter, McClennen & Fish, William Shaw McDermott, McDermott & Rizzo, Frances Robinson, David & Baker, Law Offices of Willie J. Davis, Boston, Mass., and John Cicilline, Providence, R.I., were on brief, for Edward Gabree, et al.
 Andrew Good, Boston, Mass., by appointment of the Court, for Lanier Griffin, a/k/a "Jitters".
 John B. Lawlor, Jr., Boston, Mass., with whom Moos & Lawlor, Boston, Mass., was on brief, for Norman Amado.
 Jacob Laufer, New York City, with whom Bornstein & Laufer, New York City, was on brief, for Charles Romano.
 Michael J. Liston, Boston, Mass., and Palmer & Dodge, Boston, Mass., on brief, for Mattie Ledbetter, a/k/a "Theresa".
 Tobin N. Harvey and Dennis J. Kelly, Asst. U.S. Attys., Boston, Mass., with whom William F. Weld, U.S. Atty., Boston, Mass., Robert S. Mueller, Asst. U.S. Atty., Chief, Crim. Div., and E. Sydney Hanlon, Asst. U.S. Atty., San Francisco, Cal., were on brief, for the U.S.A.
 Paula J. DeGiacomo, Asst. Atty. Gen., Boston, Mass., with whom Francis X. Bellotti, Atty. Gen., Frederick W. Riley, Chief, Crim. Bureau, and Barbara A.H. Smith, Chief, Crim. Appellate Div., Boston, Mass., were on brief, for intervenor Attorney General.
 Before CAMPBELL, Chief Judge, COFFIN, BOWNES and BREYER, Circuit Judges.
 OPINION EN BANC
 COFFIN, Circuit Judge.
 
 
 1
 These multiple appeals from drug conspiracy convictions resulted in reversals by a panel of our court, which found that a section of the Massachusetts wiretap statute, Mass.Gen.Laws Ann. ch. 272, Sec. 99 F(1), identifying officials empowered to apply for wiretap warrants, afforded less procedural protection than did the comparable section of the federal statute, 18 U.S.C. Sec. 2516(2). A petition for rehearing en banc was granted, the panel's opinion withdrawn, supplemental briefs submitted, and reargument had. We now decide that the Massachusetts statute, supplemented by the procedures required by the Massachusetts Supreme Judicial Court in Commonwealth v. Vitello, 367 Mass. 224, 327 N.E.2d 819 (1975), does not conflict with or diminish federal requirements and is thus not facially invalid. Because of the particular circumstances relating to the authorizations of the wiretaps in these cases and because of the failure to follow a procedure specifically recommended in Vitello we remand to the district court for further findings. As for the remaining issues raised we see no reversible error.
 
 I. Validity of Authorization for Wiretaps
 A. Facts
 
 2
 Evidence leading to the conviction of the sixteen appellants now before us arose from a joint investigation conducted by federal agents of the Drug Enforcement Administration, members of the Boston Police Drug Control Unit and officers assigned to the Organized Crime Division of the Suffolk County District Attorney's Office in Massachusetts. Crucial evidence, indicating defendants' participation in an illegal heroin distribution network, was collected by electronic surveillance of five telephone numbers in Norfolk and Suffolk counties. Recordings of the intercepted conversations, along with the results of visual surveillance, were presented to a federal grand jury, which returned an indictment charging nineteen defendants with a conspiracy to "knowingly and intentionally possess with intent to distribute and to distribute quantities of heroin, a Schedule I controlled substance, in violation of Title 21, United States Code, Section 841(a)(1); all in violation of Title 21, United States Code, Section 846".
 
 
 3
 Before trial defendants filed consolidated motions to suppress the evidence obtained via wiretaps and to dismiss the indictments; these motions were denied. After fifteen of the defendants waived their right to a jury trial, their cases were submitted to the district court solely on the basis of stipulations of facts. On July 7, 1982, the district court denied each of the defendants' motions for judgment of acquittal, and found each guilty of the conspiracy charged in the indictment. Two defendants, Franklin Shearer and Gail Barber, chose to proceed by jury trial and were found guilty.
 
 
 4
 Of these seventeen, fifteen have appealed from the July 7, 1982 judgments of conviction (the Claudius Smith cases). The two remaining defendants of the nineteen indicted had become fugitives. One of these, appellant Norman Amado, was subsequently taken into federal custody. On June 30, 1983, he filed a motion to suppress, adopting the motion that had been submitted in the stipulated facts trial. On July 15, 1983 the government filed additional material, not earlier submitted, in the form of extensive affidavits and exhibits of District Attorney Flanagan and Assistant District Attorney Crossen detailing the procedures followed by them in obtaining the five wiretap warrants at issue. The panel's decision in the Claudius Smith cases having been issued on June 30, 1983, the district court, on July 27, 1983, allowed Norman Amado's motion to suppress and to dismiss "on the basis of" the panel's opinion that the wiretaps should have been suppressed. The government appealed. Both this appeal and those in the Claudius Smith cases are now before us.
 
 
 5
 The first issue concerns the propriety of admitting into evidence some 400 pages of transcribed conversations gained from several thousand telephone calls intercepted between November 6, 1981 and February 4, 1982 pursuant to basic applications for judicial authorization to intercept five telephones and amendments and renewals of such applications. The essential procedure involved, first, a letter of designation to Assistant District Attorney Gary Crossen, signed by the District Attorney, Newman Flanagan, empowering the former "to make application pursuant to Massachusetts General Laws, Chapter 272, Section 99, for a warrant and any renewals thereof, to intercept wire communications to and from" a designated telephone number. The second step was an application, signed by Crossen, containing specific supporting information. The application was then presented to Massachusetts Superior Court Justice McGuire, who issued the necessary warrants.
 
 
 6
 Subsequent to the consideration of the Claudius Smith appeals by our court's panel, the government, as we have noted, filed in the Norman Amado case voluminous material further detailing the procedure followed in connection with the wiretaps. Affidavits from District Attorney Flanagan and Assistant District Attorney Crossen averred that substantial discussion with and consideration by the district attorney of the need for a wiretap preceded each letter of designation, that the district attorney was kept advised continually of progress and problems, that he approved all requests for amendments and renewals of authority. The Amado case record further reveals, in addition to the letters of designation and five applications, numerous applications for renewals and for amendments. These latter kinds of applications were signed, as in the case of the basic applications, only by Assistant District Attorney Crossen. The five applications for renewals recited that each had been authorized by the district attorney. No such recitation appeared in the fourteen applications for amendments. We have collected data concerning the date and authorized coverage of applications, renewals, and amendments in a tabulation in the Appendix.[1]
 
 
 7
 B. Validity of the Massachusetts Statute, Mass.Gen.Laws Ann. ch. 272, Sec. 99 F(1)
 
 
 8
 We need not dwell long on basic presuppositions--that the objectives of federal legislation controlling electronic surveillance are to protect privacy, to establish uniform standards not only on a federal level but in a state or county governing the authorization of interceptions, and to ensure adherence to these standards through centralizing responsibility in top level state and county prosecutors who can be held accountable for departures from preestablished policy; and that, so long as federal standards are not jeopardized or eroded, state regulation is not proscribed but rather is specifically contemplated. 18 U.S.C. Sec. 2516(2).
 
 
 9
 The specific dispute in these appeals deals with ways of achieving the required centralized accountability. It arises from a perceived disparity of verbs employed in the federal statute and the implications of such disparity on the verb used in the Massachusetts statute. The pertinent federal provisions deal with both federal and state officials. As to the former, 18 U.S.C. Sec. 2516(1) states:
 
 
 10
 "The Attorney General, or any Assistant Attorney General specially designated by the Attorney General, may authorize an application to a Federal judge of competent jurisdiction for ... an order authorizing or approving the interception of wire or oral communications ...."
 
 
 11
 As to state officials, 18 U.S.C. Sec. 2516(2) states:
 
 
 12
 "The principal prosecuting attorney of any State, or the principal prosecuting attorney of any political subdivision thereof, ... may apply to [a state court] judge for ... an order authorizing, or approving the interception of wire or oral communications ...."
 
 
 13
 Appellants urge that we note the verbal difference between these two provisions: allowing the United States Attorney General or a specially designated Assistant Attorney General to authorize applications to a judge, while allowing principal state prosecuting attorneys (a state's attorney general or district attorney) merely to apply for an intercept order. The thought advanced is that, given the immensity of the jurisdiction of the United States Attorney General, he or his specially designated assistant must be allowed leeway by way of having other officials do the actual work of making application, while state attorneys general and the top prosecutors in each county need not have such assistance and must themselves be the applicants for intercept orders. Given this difference between "authorize" and "apply", the Massachusetts statute, ch. 272, Sec. 99 F(1), must be seen as illegally expanding the federal statute, for it provides:
 
 
 14
 "The attorney general, any assistant attorney general specially designated by the attorney general, any district attorney, or any assistant district attorney specially designated by the district attorney may apply ex parte to a judge of competent jurisdiction for a warrant to intercept wire or oral communications."
 
 
 15
 In short, argue appellants, the federal law recognizes only one applicant, the district attorney; the state statute would allow a second applicant, as here, the assistant district attorney.
 
 
 16
 If this were the complete statutory framework, appellants' argument would have formidable force: we would be confronting a state statute that gave an assistant district attorney power equal to that of a district attorney in initiating a request for court authority to intercept a telephonic communication. Such an expansion would run counter both to Sec. 2516(2), reposing application responsibility in one state official, and to the ample legislative history underscoring the need for centralization of policy relating to electronic surveillance in one top prosecutor at county and state levels. See infra, S.Rep. No. 1097, reprinted in 1968 U.S.Code Cong. & Ad.News 2112, at 2187.
 
 
 17
 But we do not confront a Sec. 99 F(1) standing alone and vulnerable. It has been fortified by the carapace of deliberate judicial interpretation and supplementary requirements imposed by the Massachusetts Supreme Judicial Court in Commonwealth v. Vitello, 367 Mass. 224, 327 N.E.2d 819 (1975). In that case the court not only subjected the Massachusetts statute to close scrutiny to determine whether or not it was "in substantial compliance with the federal law", id. at 230, 327 N.E.2d 819, but added a detailed judicial gloss in the nature of a set of required procedures. It held that the procedures it mandated for the special designation by a district attorney of an assistant district attorney to apply for a warrant to intercept "comport with the Federal enabling authority". Id. at 254, 327 N.E.2d 819. In reaching this conclusion, the Supreme Judicial Court imposed the following specific requirements:
 
 
 18
 1. It interpreted "specially designated" to mean "that an assistant district attorney ... must bring the matter for examination before his senior officer, the district attorney"; id. at 256, 327 N.E.2d 819.
 
 
 19
 2. "[T]he district attorney is to determine whether a particular proposed use of electronic surveillance would be consistent with the overall policy". Id. This determination requires "not a cursory but full examination by the district attorney of the application". Id. at 256 n. 16, 327 N.E.2d 819.
 
 
 20
 3. The district attorney must "authorize each such application in writing", id. at 232, 256, 327 N.E.2d 819; "the special designation of [an] ... assistant district attorney must be on a case by case basis with written authorization", id. at 257 n. 17, 327 N.E.2d 819. This satisfies the federal requirements even if they are read to require that the district attorney himself must apply for the warrant, but the court reads the federal requirements as being satisfied if the chief prosecuting officer has centralized authorizing power. Id.
 
 
 21
 The Supreme Judicial Court also recommended, "[T]he better procedure is that the ... district attorney should cosign the application for the warrant with the designated assistant". Id. at 232, 327 N.E.2d 819.
 
 
 22
 The panel's decision, we now conclude, did not sufficiently take into account the extent to which Sec. 99 F(1) has been thus undergirded by Vitello. Unlike a situation where a state court interpretation "might impose requirements less stringent than" federal requirements, United States v. Marion, 535 F.2d 697, 702 (2d Cir.1976), the procedure mandated by the Supreme Judicial Court calls for far more protection than a mere form letter of designation, which would amount to nothing more than a standing order frustrating the twin congressional objectives of policy uniformity and political accountability, and would constitute an abdication of responsibility. The detailed review by a district attorney of every application for a proposed use of electronic surveillance on a case by case basis, and his written special designation of an assistant to submit and prosecute the application before a justice, would seem to satisfy fully the congressional objectives. Indeed, insofar as the Massachusetts procedures restrict the district attorney to designating only an assistant district attorney to apply for a warrant, it is narrower than the federal procedure.
 
 
 23
 All of this is consistent with what the Congress was trying to achieve. The Senate report relating to Sec. 2515(2) contains unmistakable clues to the meaning of "apply", indicating its equivalence with "authorize". It begins by saying that:
 
 
 24
 "Section 2516 of the new chapter authorizes the interception of particular wire or oral communication under court order pursuant to the authorization of the appropriate Federal, State, or local prosecuting officer." S.Rep. No. 1097, reprinted in 1968 U.S.Code Cong. & Ad.News 2112, 2185.
 
 It continues with a sentence stating:
 
 25
 "Paragraph (2) provides that the principal prosecuting attorney of any State or the principal prosecuting attorney of any political subdivision of a State may authorize an application to a State judge of competent jurisdiction, as defined in section 2510(9), for an order authorizing the interception of wire or oral communications." Id. at 2187.
 
 
 26
 The following sentence states that "the issue of delegation by that officer would be a question of State law." Id. If all this sentence meant was merely that state law could permit an office messenger to deliver a district attorney's wiretap application to the superior court, it would seem clearly an exercise in supererogation.
 
 
 27
 The debate in the Congress confirms the Senate report. Senator McClellan, the bill's sponsor, repeatedly indicated that what was contemplated by the legislation was approval or authorization by the chief prosecuting attorney. 114 Cong.Rec. 11,208 (1968); 114 Cong.Rec. 11,231 (1968); 114 Cong.Rec. 14,469 (1968).
 
 
 28
 Appellants, as we understand them, do not contest the accuracy of this capsule summary of legislative history. They make their stand on the proposition that the words of the federal statute speak so clearly that recourse to legislative history is impermissible. They take the position that Sec. 2516(2) in authorizing a state district attorney to "apply" differs significantly from Sec. 2516(1), which authorizes the United States Attorney General or his specially designated assistant to "authorize" an application. Were these two words precise and antipathetic, we would agree; but they are not. "Apply" seems to us to range from the ministerial act of filing a paper with someone, to the more significant act of signing the paper that is filed, and to the most significant act of deciding that there should be a paper prepared, signed, and filed. Moreover, Sec. 2518(1)(a) states that each wiretap application shall include "the identity of the investigative or law enforcement officer making the application, and the officer authorizing the application". Does "apply" apply to both categories? The answer would not seem so clear as to preclude resort to legislative history.
 
 
 29
 Finally, we are admonished that, when issues of preemption are involved, we must look at the relationship of state and federal laws "as they are interpreted and applied, not merely as they are written". Jones v. Rath Packing Co., 430 U.S. 519, 526, 97 S.Ct. 1305, 1310, 51 L.Ed.2d 604 (1977). We are to look for "an unambiguous Congressional mandate", Florida Lime & Avocado Growers, Inc. v. Paul, 373 U.S. 132, 147, 83 S.Ct. 1210, 1219, 10 L.Ed.2d 248 (1963), and to consult legislative history. Id. at 148-50, 83 S.Ct. at 1220-21. We have accordingly been sensitive to the claims of Congressional intent in approaching preemption claims. Grinnell Corp. v. Hackett, 475 F.2d 449, 454-57 (1st Cir.1973); Chrysler Corp. v. Rhodes, 416 F.2d 319, 323 (1st Cir.1969).
 
 
 30
 We therefore deem it both permissible and sensible to consider this clearly expressed intent of the Congress. As we have indicated, we are of the view that Sec. 99 F(1), as glossed by Vitello, is entirely consistent with the intent of Congress. We note that this holding places us in agreement with the Second Circuit in United States v. Tortorello, 480 F.2d 764 (1973) (though New York statutes defined "applicant" as a district attorney, it was sufficient if the district attorney approved an application prepared by his assistants) and in Alexander v. Harris, 595 F.2d 87, 89 (1979) (holding that a New Jersey statute allowing the district attorney to authorize in writing applications by investigative personnel was in conformity with Sec. 2516(2)); and with the Fifth Circuit in United States v. Pacheco, 489 F.2d 554 (1974) (holding that a Florida statute directing that the governor authorize initial applications was consistent with federal law).
 
 
 31
 C. Validity of the Authorization in These Cases
 
 
 32
 Our holding that the Massachusetts statute, ch. 272, Sec. 99 F(1), as interpreted and strengthened by Vitello, is consistent with Sec. 2516(2) does not dispose of this issue.
 
 
 33
 If the preferred practice, recommended by the Supreme Judicial Court, of the district attorney cosigning every application had been followed, there would be no questioning the sufficiency of his authorization. This is so because the document itself would contain the detailed considerations that are expected to underlie a knowledgeable authorization. The presumption of regularity would be at its strongest. A self-evidencing authorization signature on any application for an order "approving the interception of a wire or oral communication", 18 U.S.C. Sec. 2518(1), would be entitled to the greatest deference. United States v. Turner, 528 F.2d 143, 151 (9th Cir.1975) ("[I]t is to be presumed that the officer has properly exercised the judgment called for by the statute when he affixes his signature to an order authorizing an application".) As a matter of common sense it seems to us to impose no real extra burden on a district attorney to affix his signature to an application that he has already considered in detail.
 
 
 34
 It is of course true that the lack of such a document and the presumption it would enjoy is not fatal to the government. The absence of a compelling signature on a critical document can be remedied by proof of actual authority. United States v. Chavez, 416 U.S. 562, 572-74, 94 S.Ct. 1849, 1854-55, 40 L.Ed.2d 380 (1974); United States v. Ivic, 700 F.2d 51 (2d Cir.1983); United States v. Scully, 546 F.2d 255 (9th Cir.1976); United States v. Falcone, 505 F.2d 478 (3d Cir.1974); United States v. Roberts, 477 F.2d 57 (7th Cir.1973). But litigation is invited.
 
 
 35
 In the instant case it seems to us that there must be further exploration in the district court of the existence and extent of authorizations specifically given by the district attorney. In the first place the letters of designation are identical letters, in skeletal form, and purport to authorize applications for renewal in a blanket, open-ended manner.[2] In the second place, although each of the five applications for renewal contains an averment by the assistant district attorney that he was authorized by the district attorney, there is no written evidence of each such authorization. There is merely the averment of the district attorney in his affidavit that "any determination to expand the electronic surveillance or renew the order is made by me after a thorough review".
 
 
 36
 Although the authorization process portrayed in these documents may comply fully with the requirements of Title III, the district court did not make a particularistic inquiry into this matter in either the Claudius Smith or the Norman Amado cases. In the latter the affidavits and exhibits of District Attorney Flanagan and Assistant District Attorney Crossen were not relied on for decision and in the former such data were not introduced. In the Amado case, the affidavits and exhibits portray a process in which the district attorney was much more engaged in the essential decision making than was shown in the record in the Smith cases. It must be noted, however, that the filings in the Amado case came after the panel's decision in the Smith cases. We think that defendants should have some opportunity to test the sufficiency of the government's documentation and that the government should have an opportunity to try to remedy any perceived deficiency. We emphasize here what should be obvious, that the failure of the Massachusetts District Attorney to follow the cosigning recommendation of the Supreme Judicial Court in Vitello has necessitated a detailed factual inquiry by the district court. We hope that in the future this will not be necessary.
 
 
 37
 Should the court find that any interception was in fact not properly authorized, it should determine whether the admission of evidence therefrom requires setting aside any judgment of conviction and ordering a new trial for the individual or individuals affected. In such case the government could, if it wished, appeal. Should the court find no error requiring a new trial, it should file its findings of fact and conclusions of law, after which appeal if desired may follow in normal course.
 
 
 38
 II. Additional Issues Raised in Defendants' Motion to Suppress
 
 
 39
 The wiretap authorization issue addressed in the first part of this opinion was only one among many issues defendants originally raised in support of their claim that the district court should have suppressed the wiretap evidence. The panel of this court that first heard their appeal found that the Massachusetts wiretap authorization procedure failed to comply with the requirements of Title III, and it reversed defendants' convictions on this basis without reaching the additional issues. In the light of our present determination that the Massachusetts authorization procedure is facially valid, we must now consider whether there is any merit in the remaining issues raised by defendants.
 
 
 40
 These issues fall into two broad categories. In the first category are allegations that elements of the Massachusetts wiretap statute other than the authorization procedure fail to meet the requirements of Title III. In the second category are charges that, even if the Massachusetts statute does comply with Title III, the procedure followed in this case failed to meet the requirements of these statutes and so the wiretap evidence should have been suppressed.
 
 
 41
 A. Attacks on the Massachusetts Wiretap Statute
 
 
 42
 When Congress enacted Title III, it intended to occupy the field of wiretapping; concurrent state regulation of wiretapping is valid only to the extent that it complies with the requirements of Title III. Title III requires suppression "[w]henever any wire or oral communication has been intercepted" if disclosing evidence of the intercepted communication "would be in violation of this chapter". 18 U.S.C. Sec. 2515. Defendants argue that wiretap evidence gathered pursuant to provisions of the Massachusetts statute must be suppressed if those state provisions provide fewer safeguards than Title III. They point to a number of provisions of the Massachusetts statute (in addition to the authorization procedure discussed above) that are arguably less restrictive than the parallel provisions of Title III.
 
 
 43
 It is not enough for defendants to show that various provisions of the Massachusetts statute might countenance procedures that would violate the requirements of Title III: they must show that such improper procedures were used in this case. The criterion for determining whether a state law is preempted by federal regulation "requires us to consider the relationship between state and federal laws as they are interpreted and applied, not merely as they are written." Jones v. Rath Packing Co., 430 U.S. 519, 526, 97 S.Ct. 1305, 1310, 51 L.Ed.2d 604 (1977) (emphasis added). If judges and law enforcement officers in Massachusetts have interpreted the state statute to require procedural protections equal to those required under Title III, defendants will not be heard to argue that a different interpretation of the state statute might produce a result violative of Title III. Thus, for example, defendants cannot prevail on their claim that Sec. 99 J of the Massachusetts statute is void for failing to require a separate probable cause determination in a warrant renewal order, since they have made no showing that the warrant renewals in their case were made without separate probable cause determinations. To the contrary, the record demonstrates that Justice McGuire of the Massachusetts superior court did make a separate probable cause determination for each warrant renewal.
 
 
 44
 One of defendants' objections to the Massachusetts statute is that it allows a wiretap warrant to be issued by a judge "of competent jurisdiction" who sits either in the county where the interception is to take place or in the county where the office of the applicant is located. Mass.Gen.Laws Ann. ch. 272, Sec. 99 G. Title III provides that a federal judge may issue wiretap warrants only "within the territorial jurisdiction of the court in which the judge is sitting". 18 U.S.C. Sec. 2518(2). Defendants argue that the Massachusetts provision, which permits a judge in one county to issue a warrant for a wiretap in a different county, is less restrictive than the parallel provision of Title III and so is void. Defendants note that in this case, the Suffolk County Assistant District Attorney was able to apply for and obtain from a superior court justice sitting in Suffolk county warrants for three wiretaps on Norfolk County telephones. They argue that this procedure violates the purpose of Title III, which is to centralize "in a publicly responsible official subject to the political process the formulation of law enforcement policy on the use of electronic surveillance techniques". S.Rep. No. 1097, reprinted in 1968 U.S.Code Cong. & Ad.News at 2185.
 
 
 45
 We note at the outset that the "publicly responsible official" contemplated by Title III is the attorney general or district attorney who authorizes the wiretap application, not the judge who approves the warrant. The Suffolk County District Attorney has jurisdiction over conspiracies that take place partly in his county. The fact that he is not responsible to a Norfolk County electorate should not prevent him from seeking a warrant to tap telephones located in that county if he can establish probable cause to believe that the intercepted conversations will provide evidence of a conspiracy taking place in his own county. See United States v. Lilla, 534 F.Supp. 1247 (N.D.N.Y.1982) (holding that Title III "does not purport to dictate to states what the geographical authority of their enforcement officers must be"); People v. DiPasquale, 47 N.Y.2d 764, 391 N.E.2d 710, 417 N.Y.S.2d 678 (1979) (holding that under New York law, a district attorney may apply for an out-of-county wiretap warrant as long as there is a "sufficient nexus" between the conduct covered by the application and the county represented by the district attorney).
 
 
 46
 The provision of Title III that authorizes state wiretap statutes says that the appropriate state prosecuting attorney may apply "to a State court judge of competent jurisdiction" for a wiretap warrant. 18 U.S.C. Sec. 2510(9)(b). In Massachusetts, the superior court is a court of general criminal jurisdiction. Mass.Gen.Laws Ann. ch. 212, Sec. 6; see also New England Telephone & Telegraph Co. v. District Attorney of Norfolk County, 374 Mass. 569, 373 N.E.2d 960 (1978), citing Commonwealth v. Kemp, 254 Mass. 190, 150 N.E. 172 (1926). Any superior court justice, regardless of the county in which he sits, exercises all the jurisdiction of the court. Mass.Gen.Laws Ann. ch. 212, Secs. 1, 2. The Massachusetts statute could, in compliance with Title III, authorize the applicant to seek a wiretap warrant from any superior court justice anywhere in the state; but Sec. 99 G limits the applicant's choice to a justice sitting in the county in which the tap is to occur or in the county in which the applicant's office is located. In this respect the Massachusetts statute is more restrictive, not less restrictive, than Title III demands.
 
 
 47
 In another challenge to the wiretap procedure followed in their case, defendants point out that Title III provides, "Every order and extension thereof ... shall be conducted in such a way as to minimize the interception of communications not otherwise subject to interception under this chapter." 18 U.S.C. Sec. 2518(5). Defendants argue that the Massachusetts statute is invalid because it contains no "minimization" provision.
 
 
 48
 Title III does not require that the state wiretap statute contain any language expressly addressing the minimization requirement. At most, it requires state statutes to provide procedural protections that prevent the officers conducting the wiretap from unnecessarily seizing extraneous communications. We agree with the Massachusetts Supreme Judicial Court's holding in Vitello that the Massachusetts wiretap statute provides adequate minimization safeguards. 367 Mass. at 266, 327 N.E.2d 819. For example, Sec. 99 F(2)(e) of the Massachusetts statute requires the wiretap application to state that the communications sought to be intercepted are "material to a particularly described investigation" and are not privileged. Section 99 F(2)(f) requires that the application state, if practicable, the hours during which the interceptions are expected to occur. Section 99 I(3) states that the wiretap warrant must contain a "particular description of the nature of the oral or wire communications to be obtained by the interception". Section 99 M(e) requires any agent who intercepted communications to swear to the content of communications intercepted but not recorded. The cumulative effect of these and other provisions is to "make clear to the executing officer that his surveillance is to be limited to the conversations material to designated offenses under investigation". 367 Mass. at 266, 327 N.E.2d 819.
 
 
 49
 It is still possible, of course, for a defendant to argue that a particular Massachusetts wiretap has been conducted in a manner that violates the minimization requirement of Title III. Defendants apparently attempt to make such an argument by noting that the warrants' "only minimization restriction ... [is] to avoid recording 'clearly non-criminal' offenses". This assertion is contradicted by the record. The order authorizing the interceptions specifically identifies the people whose conversations may be intercepted and limits interceptions of other conversations to a sixty-second initial check and subsequent ten-second spot checks to discover whether one of the named individuals has become a party to the conversation. It provides that the intercepting device be monitored at all times, so that there is no automatic recording of conversations not covered by the intercept order. It forbids the recording of conversations that are clearly non-criminal or are privileged. It requires written reports at three-day intervals advising the judge of the results of the interceptions and the need for continued interceptions. These specific directions, combined with the order's general direction that the "law enforcement officers executing this order shall make interceptions in such a way as to minimize the interceptions of oral or wire communications not otherwise subject to interception", provide ample protection against unwarranted seizures.
 
 
 50
 The Supreme Judicial Court's decision in Vitello disposes of a number of other objections that defendants make to the Massachusetts wiretap statute. We have already noted that we regard the statute as existing in the form given to it by the Supreme Judicial Court's interpretation: for our purposes, the provisions "read into" the statute by the Supreme Judicial Court are as much a part of the Massachusetts wiretap law as the language enacted by the legislature. We hold that Vitello adequately answers the following claims made by defendants: Claim C that Sec. 99 K does not require execution of wiretap warrants "as soon as practicable", 367 Mass. at 260-61, 327 N.E.2d 819; Claim E that the warrant execution provision in Sec. 99 K(2) of the Massachusetts statute conflicts with Sec. 2516(2) and Sec. 2518(4)(d) of Title III, id. at 260, 327 N.E.2d 819; Claim H that Sec. 99 B(7) allows electronic surveillance for offenses not within the scope of the federal authorization in Sec. 2516(2), id. at 268, 327 N.E.2d 819 (defendants were convicted of conspiracy, as Title III authorizes, not of simple possession of drugs); Claim I that Sec. 99 E(3) does not require "a full and complete statement" that normal investigative procedures have been tried and have failed, id. at 259, 327 N.E.2d 819; Claim K that Sec. 99 M and N do not require immediate return of the warrant and sealing of the tapes and so conflict with Sec. 2518(8)(a) of Title III, id. at 266-68, 327 N.E.2d 819; Claim L that the mandatory notice requirements of Sec. 99 L are less stringent than those of the Title III, id. at 268, 327 N.E.2d 819.
 
 
 51
 As to defendants' remaining attacks on the Massachusetts wiretap statute, we note that we have considered them and found them unconvincing. Some, as we have already observed, are abstract charges that the statute is insufficient, charges unaccompanied by any claim that defendants have suffered prejudice from the alleged insufficiencies. Some are based on mere semantic differences between the state and the federal statute that signal no underlying difference in the safeguards provided by each. Some are based on a creative misreading of the language of the federal statute. Some misstate the requirements of the state statute. All are without merit.
 
 
 52
 B. Attacks on the Sufficiency of the Procedures Used in This Case
 
 
 53
 Defendants argue that even if the Massachusetts wiretap statute is facially sufficient, the warrants issued in this case are void for failure to comply with the procedures required by the state statute, the federal statute, or both. Specifically, defendants allege (1) that the affidavits accompanying the warrant applications failed to demonstrate that normal investigative procedures had been tried and had failed; (2) that the affidavits accompanying the applications failed to establish probable cause to issue the warrants; (3) that the warrants allowed interception of conversations by people not named in the warrants, in violation of Mass.Gen.Laws Ann. ch. 272, Sec. 99 I; and (4) that the investigating officers returned the warrants and tapes eight days after the warrants had expired rather than the seven days required by Mass.Gen.Laws Ann. ch. 272, Sec. 99 M.
 
 
 54
 The district court, in its memorandum accompanying the order denying defendants' motion to suppress, answered all of these complaints completely and correctly. Defendants have added nothing to their original arguments that prompts us to engage in a lengthy reconsideration of these issues. We make a few additional points here to aid the parties in understanding why we consider the district court's disposition correct.
 
 
 55
 We note first that we have recently reaffirmed the standard we adopted in United States v. Scibelli, 549 F.2d 222 (1st Cir.1977), for reviewing the sufficiency of wiretap applications. United States v. Southard, 700 F.2d 1 (1st Cir.1983). It is not our province to engage in de novo review of an application; instead, we "test it in a practical and commonsense manner" to determine whether the facts which it sets forth are "minimally adequate" to support the findings made by the issuing judge. Id. at 28, citing Scibelli at 226. The applications for the wiretaps in this case easily satisfy the criteria we identified in Scibelli and Southard.
 
 
 56
 We also note that defendants' challenge to the probable cause finding depends in large measure on their charge that the information of confidential informants failed to meet the tests for reliability established by the Supreme Court in Aguilar v. Texas, 378 U.S. 108, 84 S.Ct. 1509, 12 L.Ed.2d 723 (1964), and Spinelli v. United States, 393 U.S. 410, 413, 89 S.Ct. 584, 587, 21 L.Ed.2d 637 (1969). The Supreme Court has recently abandoned rigid adherence to the two-pronged Aguilar/Spinelli test and has adopted a more flexible "totality of the circumstances" test for determining whether a confidential informant's tip is reliable. Illinois v. Gates, --- U.S. ----, 103 S.Ct. 2317, 76 L.Ed.2d 527 (1983). Again, we think the warrant applications in this case easily meet the current standard.
 
 
 57
 Finally, we observe that we have no need to rule on defendants' arguments that Sec. 99 I of the Massachusetts statute establishes a standard more stringent than that of Title III for intercepting the communications of persons not identified in the warrant, and that an interception made in violation of Sec. 99 I cannot be admitted in a federal proceeding even though it complies with the requirements of the federal statute. We agree with the district court that the original warrant, if read in its entirety, meets the standard of Sec. 99 I. It allows the conversations of unnamed conspirators to be intercepted only during brief spot checks and provides that the investigating officers shall not expand the scope of their investigation to include these conspirators unless the officers first procure an amended warrant from the issuing judge.
 
 III. Defendants' Motion to Dismiss
 
 58
 Defendants also insist that the district court should have granted their motion to dismiss the indictments. Their argument in support of this position runs thus: The wiretaps were conducted pursuant to state warrants, which designated the offenses under investigation as violations of certain sections of Mass.Gen.Laws Ann. ch. 94C. The designated sections make it a crime to manufacture, to distribute, to dispense, or to possess with the intent of doing any of the foregoing, certain controlled substances (e.g., heroin, cocaine, and marijuana). The warrants do not specifically mention Sec. 40 of this chapter, which makes it a crime to participate in any conspiracy to violate the drug laws designated in the warrants. The evidence gathered pursuant to the wiretaps authorized by these warrants was presented to a federal grand jury, and the grand jury returned indictments for conspiracy to violate 21 U.S.C. Sec. 841(a)(1), which makes it a crime for a person "to manufacture, distribute, or dispense, or possess with intent to manufacture, distribute, or dispense, a controlled substance".
 
 
 59
 Defendants argue that the warrants designated neither the federal crime of conspiracy to violate the drug laws nor the parallel conspiracy provision of the state statute as offenses under investigation. In order to present to the federal grand jury evidence of offenses not designated in the state warrants, they argue, the prosecutor must first have obtained authorization pursuant to 18 U.S.C. Sec. 2517(5), which provides:
 
 
 60
 "When an investigative or law enforcement officer, while engaged in intercepting wire or oral communications in the manner authorized herein intercepts wire or oral communications relating to offenses other than those specified in the order of authorization or approval, the contents thereof, and evidence derived therefrom, ... may be used under subsection (3) of this section [in any criminal proceeding] when authorized or approved by a judge of competent jurisdiction where the judge finds on subsequent application that the contents were otherwise intercepted in accordance with the provisions of this chapter."
 
 
 61
 Because no one sought approval to use the evidence of conspiracy, defendants argue, that evidence was not properly presented to the federal grand jury, and the indictments based on it should have been dismissed.
 
 
 62
 We note at the outset that although Sec. 2517(5) requires the offenses under investigation to be "specified in the order of authorization", it does not require that they be specified by reference to particular statutory sections. The order authorizing the wiretaps in this case cited evidence in the application that defendants "are engaged in a continuing conspiracy to violate and are violating Massachusetts General Law, Chapter 94C, Sections 32, 32A, 32E and 34 by operating a large scale drug trafficking operation". The authorizing judge found probable cause to believe "that the only reasonably likely method of gathering competent evidence of this conspiracy ... is through the requested intercept warrant". The order approving the warrant allowed interception of communications "concerning the planning and execution of a drug trafficking operation" and of "conversations concerning sale arrangements, delivery and price to members of this conspiracy". We hold that these specific references to a conspiracy to violate the Massachusetts drug laws were sufficient to identify conspiracy as one of the offenses under investigation, even though the warrant did not cite the conspiracy section of the Massachusetts statute.
 
 
 63
 The question remains whether the authorization to gather evidence of a conspiracy to violate state drug laws can be extended to include evidence of a conspiracy to violate federal drug laws. Defendants correctly observe that the purpose of Sec. 2517(5) of Title III is to prevent "subterfuge searches", in which the government uses a warrant authorizing seizure of one type of evidence as a license to collect evidence of an offense not covered by the authorization.[3] See United States v. Southard, 700 F.2d 1, 31 (1st Cir.1983); S.Rep. No. 1097, reprinted in 1968 U.S.Code Cong. & Ad.News 2112, 2188-89. When a state wiretap yields evidence of federal crimes not specified in the warrant, the best way for the investigating officers to insure that the requirements of Sec. 2517(5) are met is for them to obtain judicial authorization to use that evidence. See United States v. Marion, 535 F.2d 697, 707 and n. 21 (2d Cir.1976). This is true even when the state offense specified in the original authorization is closely related to the federal offense for which the prosecution seeks to use the evidence. Id. at 705-06. The subsequent judicial approval requirement imposes no very heavy burden of the federal officials, who may seek that approval from the same state judge who issued the original warrant. Id. at 708.
 
 
 64
 In the circumstances of this case, however, we do not think that the failure to obtain separate approval for the use of the wiretap evidence warrants dismissal of the indictments. We reach this conclusion because the state offenses specified in the wiretap authorization contain the same essential elements, described in the same language, as the federal offenses for which the indictments were returned. The authorization covered a conspiracy to violate Mass.Gen.Laws Ann. ch. 94C, Sec. 32, which makes it unlawful to "manufacture, distribute, dispense, or possess with intent to manufacture, distribute, or dispense a controlled substance." The grand jury returned an indictment for conspiracy to violate 21 U.S.C. Sec. 841(a)(1), which makes it unlawful "to manufacture, distribute, or dispense, or possess with intent to manufacture, distribute, or dispense, a controlled substance". There is no possibility of a subterfuge search here, since the elements of the state offense specified in the authorization are identical to the elements of the federal offense for which the evidence was used. We agree with the district court that in these special circumstances the federal offense cannot be considered an offense "other than those specified in the order" within the meaning of Sec. 2517(5), and that "the purposes of Title III are not usefully furthered by requiring Sec. 2517(5) approval."
 
 
 65
 We wish to emphasize that our holding is not to be read as creating a broad exception to Sec. 2517(5). We think that it will be a rare case in which the provisions of parallel state and federal statutes are "sufficiently similar" to make separate authorization unnecessary. Cf. United States v. Southard, 700 F.2d 1 (1st Cir.1983); United States v. Marion, 535 F.2d 697 (2d Cir.1976); United States v. Brodson, 528 F.2d 214 (7th Cir.1975). We repeat that the simplest and safest course is for the investigating officials to seek specific judicial authorization pursuant to Sec. 2517(5) for any evidence they acquire in the course of a wiretap.
 
 IV. Arguments of Individual Defendants
 
 66
 Various individual defendants argue that even if the wiretap evidence was properly obtained and properly used against them, it was insufficient to support their convictions. For example, defendant Veronica DeJesus argues that there was insufficient evidence to show that she was a member of the particular conspiracy charged in the indictment; defendant Carlos Ricardo Torres contends that the evidence was insufficient to show that he had knowledge that the conspiracy existed; defendant Franklin Shearer (the only appellant who was tried by a jury) argues that there was insufficient evidence to prove his involvement in the conspiracy; and so on.
 
 
 67
 Defendants have a difficult burden to carry: they must show that the evidence before the trier of fact and all the legitimate inferences drawn therefrom, viewed in the light most favorable to the government, were insufficient to demonstrate beyond a reasonable doubt that defendants were guilty. United States v. Patterson, 644 F.2d 890, 893 (1st Cir.1981); United States v. Fortes, 619 F.2d 108, 122 (1st Cir.1980). As we have noted before, "The prosecution may prove its case by circumstantial evidence, and it need not exclude every reasonable hypothesis of innocence so long as the total evidence permits a conclusion of guilt beyond a reasonable doubt". United States v. Gabriner, 571 F.2d 48, 50 (1st Cir.1978). Once the existence of a conspiracy has been established, even slight evidence implicating a defendant may be sufficient proof of his involvement. United States v. Schmaltz, 562 F.2d 558, 560 (8th Cir.1977); United States v. Dunn, 564 F.2d 348, 357 (9th Cir.1977). In the case of a "chain" conspiracy such as this one, the government does not have to show that "each defendant knew each and every conspirator and every step taken". United States v. Agueci, 310 F.2d 817, 827 (2d Cir.1962). In this case, we find that the evidence was ample to prove the essential elements of a conspiracy charge against each of the defendants. United States v. Flaherty, 668 F.2d 566 (1st Cir.1981).
 
 
 68
 Several defendants also raise procedural objections to their convictions. For example, defendant Joanne Amado contends that the trial court erred in refusing to grant a continuance when it appointed substitute counsel to represent her five days before trial, and defendant Carlos Ricardo Torres argues that the government's witnesses presented evidence to the grand jury in an inaccurate and inflammatory manner. We have reviewed these claims, according the appropriate deference to the rulings of the lower court, and we find no merit in defendants' allegations of error.
 
 V. Defendant Norman Amado
 
 69
 As we have already observed, defendant Norman Amado was a fugitive at the time the other Claudius Smith defendants were tried. He was subsequently apprehended; and on June 30, 1983, he filed a motion to suppress the wiretap evidence and to dismiss the indictment against him, adopting the motion submitted in the stipulated facts trial of the Claudius Smith defendants. The court granted his motion to suppress and to dismiss "on the basis" of the panel's opinion in the Claudius Smith appeal. The government appealed from that order, and the appeal in Amado's case was consolidated with the rehearing of the Claudius Smith appeals.
 
 
 70
 Amado will, of course, be affected by the court's disposition on remand of the wiretap authorization issue. If the court decides that the wiretaps were not properly authorized and that the evidence they generated should have been suppressed, then the order dismissing Amado's case will still be viable. If, on the other hand, the court finds that the wiretaps were properly authorized, then the improper authorization ground will no longer support the dismissal of the Amado case. In this latter circumstance, the question will arise whether any of the other grounds Amado raised in support of his motion to dismiss are sufficient to sustain that motion.
 
 
 71
 The government argues that since the district court granted Amado's motion to dismiss in reliance on the wiretap authorization issue, this court's review is limited to that issue. Amado contends that this court is entitled to review all the issues he raised before the district court in support of his motion to dismiss. We would be reluctant to review issues that depended for their resolution on findings of fact that the district court had not had an opportunity to develop or review. In this case, however, Amado's claims rest on the facts stipulated by the Claudius Smith defendants. Both the district court and this court have disposed of precisely the same claims, based on precisely the same facts, in reviewing the Claudius Smith cases. Since this court's resolution of those issues in Claudius Smith is binding on the district court in Amado, we see no reason to engage in the formality of remanding the Amado issues to the district court for resolution.
 
 
 72
 In addition to challenging the wiretap authorizations, Amado raises the following issues. First, he claims that the wiretap warrants were invalid because they were issued for Norfolk County telephones by a superior court justice sitting in Suffolk County. Second, he argues that the warrants were invalid because the applications did not give the issuing judge sufficient grounds on which to find that normal investigative procedures had been tried and had failed. Third, he argues that the warrants were overbroad and were issued without a sufficient showing of probable cause. Finally, he argues that the government's failure to get separate authorization pursuant to 18 U.S.C. Sec. 2517(5) before disclosing the wiretap evidence to a federal grand jury mandates dismissal of the indictment.
 
 
 73
 We have considered all of these claims in the context of the Claudius Smith appeals, and we have found that none of them provide sufficient grounds for suppressing the wiretap evidence or dismissing the indictments. Unless the district court finds on remand that suppression of the wiretap evidence is necessary because the district attorney did not adequately authorize an assistant district attorney to apply for the warrant, the decision to dismiss the Amado indictment must be reversed.
 
 
 74
 As to the issue discussed in Part I of this opinion, the judgment of the district court against the Claudius Smith defendants is vacated, and the case is remanded for proceedings consistent with this opinion. As to the issues discussed in Parts II, III, and IV of this opinion, the judgment of the district court against the Claudius Smith defendants is affirmed. The district court's order granting defendant Norman Amado's motion to suppress and to dismiss is vacated, and the case is remanded for proceedings consistent with Part V of this opinion.
 
 APPENDIX
 
 75
 Tabulation of Dates and Authorized Coverage of Applications,
 
 Renewals, and Amendments
 
 76
 A. First Application, Nov. 6, 1981; tel. no. 427-7094, listed to Grady Haynes and Joanne Amado, 92 Crawford St., Roxbury, Mass.
 
 
 77
 Warrant named 14 conversants.
 
 
 78
 1. Amendment, Nov. 9, 1981, naming 10 conversants.
 
 
 79
 2. Amendment, Nov. 18, 1981, naming 18 conversants.
 
 
 80
 3. Renewal, Nov. 19, 1981 for all 42 previously named conversants.
 
 
 81
 Termination: Dec. 6, 1981.
 
 
 82
 B. Second Application, Nov. 19, 1981; tel. no. 963-8056, listed to Edward DeJesus, 6 Pearly Evans Way, Randolph, Mass.
 
 
 83
 Warrant named 4 conversants.
 
 
 84
 4. Amendment, Nov. 24, 1981, naming 3 conversants.
 
 
 85
 5. First Renewal, Dec. 4, 1981, naming 10 conversants.
 
 
 86
 6. Amendment, Dec. 11, 1981, naming 3 conversants.
 
 
 87
 7. Amendment, Dec. 15, 1981, naming 1 conversant.
 
 
 88
 8. Second Renewal, Dec. 18, 1981, naming 14 conversants.
 
 
 89
 9. Amendment, Dec. 23, 1981, extension of time for filing status reports.
 
 
 90
 10. Third Renewal, Dec. 31, 1981, naming 1 conversant.
 
 
 91
 11. Amendment, Jan. 4, 1982, naming 2 conversants.
 
 
 92
 12. Amendment, Jan. 5, 1982, changing tel. no. to 961-1228.
 
 
 93
 Termination: Jan. 14, 1982.
 
 
 94
 C. Third Application, Dec. 29, 1981; tel. no. 769-7047, listed to Edward Gabree; 100 Hampden Drive, Norwood, Mass.
 
 
 95
 Warrant named 6 conversants.
 
 
 96
 13. Amendment, Dec. 31, 1981, extension of time for filing status reports.
 
 
 97
 14. Amendment, Jan. 4, 1982, naming 1 conversant.
 
 
 98
 Termination: Jan. 6, 1982.
 
 
 99
 D. Fourth Application, Dec. 29, 1981; tel. no. 825-7294, listed to Donna Reardon, 7 Gavin Way, South Boston.
 
 
 100
 Warrant named 5 conversants.
 
 
 101
 15. Amendment, Dec. 31, 1981, change of date of commencement of intercept.
 
 
 102
 16. Amendment, Dec. 31, 1981, extension of time for filing status reports.
 
 
 103
 17. Amendment, Jan. 5, 1982, identifying conversations regarding violations of additional laws relating to gambling, receiving stolen goods, and possession of firearms, and naming 10 conversants.
 
 
 104
 18. Renewal, Jan. 14, 1982, naming 16 conversants.
 
 
 105
 Termination: Jan. 29, 1982.
 
 
 106
 E. Fifth Application, Jan. 22, 1982; tel. no. 784-8095, listed to Edward DeJesus, 57 Maskwonicot St., Sharon, Mass.
 
 
 107
 Warrant named 7 conversants.
 
 
 108
 19. Amendment, Jan. 28, 1982, changing date of commencement of intercept.
 
 
 109
 Termination: Feb. 4, 1982.
 
 
 
 [1]
 We note also that the panel was under the impression that no letter of designation accompanied the first application. The government has supplied us with a copy of such a letter and asserts that it was in the record of the Claudius Smith cases. The letter of designation for the fifth applicant was in fact signed by First Assistant District Attorney Paul Leary, as Acting District Attorney, reciting that he had been specifically authorized by the District Attorney. In our view nothing turns on these additional facts
 
 
 [2]
 Even as to these the record was not entirely clear as to whether or not a signed letter of designation accompanied the initial application. See n. 1
 
 
 [3]
 Defendants also argue that Sec. 2517(5) is intended to prevent investigative officers from circumventing the requirements of Sec. 2518(1)(c), which provides that a wiretap warrant may not issue unless the officers show that other investigative techniques have been tried and have failed. Defendants claim that unless Sec. 2517(5) is strictly construed, officers might engage in "forum shopping". For example, federal officers who were foreclosed from obtaining a federal wiretap warrant because they had penetrated an organization through normal investigative techniques could supply the information they had obtained to state officers; the state officers could use the information to establish probable cause for a state wiretap warrant, and the federal officers could then use the fruits of the state wiretap as evidence of analogous federal crimes
 The specter defendants have conjured up instills in us no great alarm. The defendants' hypothesis requires us to postulate a set of officers who, acting in bad faith, adopt an involved plan to acquire wiretap evidence concerning an organization that they have already managed to penetrate through normal investigative techniques. Defendants have adduced no evidence of any such official misconduct in this case, and we see no reason to set up Sec. 2517(5) as a bulwark against this hypothetical threat.