UNITED STATES of America, Appellee,

v.

Richard Edward BYNUM, Jr.,
Defendant, Appellant.

No. 84–2020.

United States Court of Appeals,
First Circuit.

Argued May 9, 1985.

Decided June 3, 1985.

Willie J. Davis, Boston, Mass., for defendant, appellant.

Oliver C. Mitchell, Jr., Asst. U.S. Atty., Boston, Mass., with whom William F. Weld, U.S. Atty., Boston, Mass., was on brief, for appellee.

Before CAMPBELL, Chief Judge, VAN DUSEN,* Senior Circuit Judge, and BOWNES, Circuit Judge.

BOWNES, Circuit Judge.

Defendant-appellant Richard Edward Bynum, Jr. appeals his conviction of conspiracy to possess heroin and cocaine with intent to distribute in violation of 21 U.S.C.

* Of the Third Circuit, sitting by designation.

§ 846 and possession of heroin, cocaine, Methadone, and Dilaudid with intent to distribute in violation of 21 U.S.C. § 841(a)(1). After his motion to suppress was denied, 602 F.Supp. 1, Bynum waived jury trial and was tried and found guilty by the district judge. The bulk of the evidence against Bynum was obtained by a wiretap.

The issues before us are the same as raised at the suppression hearing:

1. whether the assistant attorney general who authorized the application for the wiretap warrant was validly designated to do so by the United States Attorney General;

2. whether the application and warrant met the requirements of 18 U.S.C. § 2518(1)(c) and (3)(c); and

3. whether the use of state law enforcement personnel to implement the wiretap violated 18 U.S.C. § 2516.

## I. *The Designation Issue*

The designation section of the federal wiretap statute provides in pertinent part, "The Attorney General, Deputy Attorney General, Associate Attorney General, or any Assistant Attorney General specially designated by the Attorney General, may authorize an application to a Federal judge of competent jurisdiction for, [an order authorizing a wiretap]." 18 U.S.C. § 2516(1).

The pertinent facts are as follows. On January 19, 1981, the last day of the Carter administration, outgoing Attorney General Civiletti executed Order Number 931–81, designating the assistant attorney generals in charge of the criminal division, the tax division, the office of legal counsel and the antitrust division to authorize applications for wiretap orders. On January 20, 1981, William French Smith became Attorney General of the United States. On February 27, 1981, Attorney General Smith by Order Number 934–81 adopted his predecessor's Order Number 931–81. On April 26, 1984, an application for an order authorizing a wiretap on a telephone used by Bynum and his confederates was filed in the United States District Court of Massa-

chusetts. The application stated that it had been authorized by the Assistant Attorney General of the Criminal Division, Stephen G. Trott, and that Trott had been designated by the Attorney General to authorize wiretap applications. Attached to the application was a copy of Order Number 931–81 (Civiletti's Order). Trott became assistant attorney general in charge of the criminal division on April 6, 1983. Neither Civiletti's Order Number 931–81 nor Smith's Order Number 934–81 has been revoked.

■ The legal principles governing a carry-over designation under the Federal Wiretap Act are now well solidified. The first is that designation by job title rather than the name of the individual currently holding the position meets the requirements of the Act. In *United States v. Pellicci,* 504 F.2d 1106 (1st Cir.1974), *cert. denied,* 419 U.S. 1122, 95 S.Ct. 805, 42 L.Ed.2d 821 (1975), we held:

But the designation of a single person accomplished by job title rather than by name does not run afoul of the legislative intent, recognized in *United States v. Giordano,* 416 U.S. 505, 520, 94 S.Ct. 1820 [1829], 40 L.Ed.2d 341 (1974), that the authority to approve applications be both narrowly confined and limited to those responsive to the political process.

*Id.* at 1107. *See also United States v. Camp,* 723 F.2d 741, 744 (9th Cir.1984); *United States v. Votteller,* 544 F.2d 1355, 1358–59 (6th Cir.1976).

■ The second principle is that a valid designation continues in effect until revoked. *United States v. Kerr,* 711 F.2d 149, 151 (10th Cir.1983); *United States v. Messersmith,* 692 F.2d 1315, 1317 (11th Cir. 1982); *United States v. Wyder,* 674 F.2d 224, 226–27 (4th Cir.), *cert. denied,* 457 U.S. 1125, 102 S.Ct. 2944, 73 L.Ed.2d 1340 (1982).

There are two circuits that have dealt directly with the transition from Attorney General Civilletti to Attorney General Smith. In *United States v. Terry,* 702 F.2d 299, 311 (2d Cir.1983), the Second Circuit held that "the incumbent Attorney General on February 27, 1981, impliedly ratified the

designation of his predecessor, thereby eliminating the possibility that prior electronic surveillance policy could escape review by a politically accountable official of the current administration." The Court of Appeals for the District of Columbia held that since the special authorization designation by Attorney General Civilletti of the assistant attorney general in charge of the antitrust division was revalidated by Attorney General Smith on February 27, 1981, the designation by Civilletti met the purpose and requirements of 18 U.S.C. § 2516(1). *United States v. Robinson,* 698 F.2d 448, 452 (D.C.Cir.1983).

■ We find and rule that the assistant attorney general who authorized the application for the wiretap order in this case was validly designated pursuant to 18 U.S.C. § 2516(1).

## II. *The Sufficiency of the Application*

Appellant claims that the application failed to show that other investigative procedures were unlikely to succeed. Section 2518(1) of title 18 requires that each wiretap application shall, *inter alia,* include the following information: "(c) a full and complete statement as to whether or not other investigative procedures have been tried and failed or why they reasonably appear to be unlikely to succeed if tried or to be too dangerous[.]" Section 2518(3) provides that the judge may issue a wiretap order if he determines, *inter alia,* that "(c) normal investigative procedures have been tried and have failed or reasonably appear to be unlikely to succeed if tried or to be too dangerous[.]"

This circuit's standard of review of a wiretap application is well settled. "It is not our province to engage in *de novo* review of an application; instead, we 'test it in a practical and commonsense manner' to determine whether the facts which it sets forth are 'minimally adequate' to support the findings made by the issuing judge." *United States v. Smith,* 726 F.2d 852, 864 (1st Cir.1984), citing and quoting *United States v. Southard,* 700 F.2d 1 (1st

Cir.1983), and *United States v. Scibelli,* 549 F.2d 222 (1st Cir.1977).

■ We have read the application and the thirty-nine-page affidavit in support of it carefully and conclude that it met the requirements of 18 U.S.C. § 2518(1) and that the district judge was fully justified in issuing a wiretap order under § 2513(3)(c).

## III. *The Use of State Law Enforcement Officers to Implement the Wiretap*

Appellant argues that the use of state law enforcement officers to conduct the electronic surveillance violated 18 U.S.C. § 2516(1) which provides in pertinent part that a federal judge "may grant in conformity with section 2518 of this chapter an order authorizing or approving the interception of wire or oral communications by the Federal Bureau of Investigation, or a Federal agency having responsibility for the investigation of the offense as to which the application is made." His contention is that this section restricts the surveillance to agents of the federal agency "having responsibility for the investigation." The use of state personnel, he argues, means the loss of political accountability by the Attorney General of the United States because the state officers are responsible to state officials only; in this case, the district attorney of Suffolk County, Massachusetts. We disagree.

As far as we can determine, there is only one case addressing the use of state law enforcement officers to conduct electronic surveillance pursuant to an order obtained under § 2516(1). In *United States v. Lyons,* 695 F.2d 802, 803 (4th Cir.1982), the Fourth Circuit adopted the opinion of the District Court of Maryland approving such a procedure. *United States v. Lyons,* 507 F.Supp. 551, 556–61 (D.Md.1981). In *Lyons,* "the monitoring equipment was operated primarily by District of Columbia Metropolitan Police Officers who were specially assigned to, and members of, a DEA Drug Task Force." *Id.* at 557. The court found

that the officers of the District of Columbia Metropolitan Police, detailed to the

Task Force, were legally under the supervision of the DEA, and that they were actually supervised by that agency during the period of time that wire communications were intercepted pursuant to a federally authorized interception order. Congress' intent to maintain lines of responsibility, therefore, was not frustrated by the DEA's use of Task Force members to monitor the wiretap.

*Id.* at 561 (footnote omitted).

We start our analysis with the application. Two paragraphs are pertinent:

IT IS FURTHER REQUESTED, pursuant to the terms and provisions of Title 18, United States Code, Section 2517(1), that agents of the Drug Enforcement Administration, *because of the cooperative nature of this joint investigation with law enforcement officers of the Commonwealth of Massachusetts,* be authorized to disclose the contents of the intercepted wire communications to state law enforcement officers, namely Massachusetts State Police assigned to, and working with, the Narcotics Unit of the Suffolk County (Massachusetts) District Attorney's Office and to the Federal Bureau of Investigation.

IT IS FURTHER REQUESTED that such state law enforcement officers of the Narcotics Unit of the Suffolk County (Massachusetts) District Attorney's Office, *who will be made Deputy United States Marshals for purposes of the investigation described in this application, before they are authorized to conduct interceptions* and special agents of the Federal Bureau of Investigation be authorized to participate in and conduct the wire interception sought by this application. [Emphasis added.]

Two things are apparent: this was a joint investigation by the DEA and law enforcement officers of Massachusetts; and the state personnel to be used would be made Deputy United States Marshals before conducting wire interceptions. We next turn to the order issued by the district court authorizing the DEA to wiretap specified telephone installations. In the order,

the district judge specifically stated in his own handwriting that the state law enforcement officers "will and must be" made Deputy United States Marshals "before they are authorized to conduct interceptions."

We can only conclude that the DEA was solely responsible for conducting and monitoring the intercepts. The state officers who operated the monitoring equipment did so as federal officers, Deputy United States Marshals, under the control and direction of the DEA. Under the facts of this case, there was no violation of either the letter or the spirit of the Act.

*Affirmed.*