**UNITED STATES of America, Appellee,**

v.

**Paul O'MALLEY, Defendant, Appellant.**

No. 84–1775.

United States Court of Appeals,
First Circuit.

Heard May 9, 1985.
Decided June 11, 1985.

Owen S. Walker, Federal Public Defender, Boston, Mass., for defendant, appellant.

Gary C. Crossen, Asst. U.S. Atty., Boston, Mass., with whom William F. Weld, U.S. Atty., Boston, Mass., was on brief for appellee.

Before CAMPBELL, Chief Judge, VAN DUSEN,* Senior Circuit Judge, and BOWNES, Circuit Judge.

LEVIN H. CAMPBELL, Chief Judge.

Appellant Paul O'Malley was convicted in the district court of conducting and conspiring to conduct an illegal gambling business in violation of 18 U.S.C. § 1955. He claims on appeal that the district court erred in not suppressing tapes of telephone conversations which the prosecution introduced into evidence. We affirm.

The investigation of appellant was part of a larger joint operation between the Commonwealth of Massachusetts and the United States Drug Enforcement Administration ("DEA") targeting the drug-related activities of a Boston, Massachusetts, criminal organization headed by one Robert Sullivan. Application was first made to the district court on April 6, 1983 for authority to intercept calls for 30 days by or to Sullivan and his known and unknown associates at two telephones located at a Boston sandwich shop known as Bobby O's Villa for the purpose of obtaining evidence of federal narcotics offenses. The application recited that it had been approved by the United States Assistant Attorney General of the Criminal Division, Honorable D. Lowell Jensen, pursuant to the provisions of 18 U.S.C. § 2516. Jensen was said to

have been specifically designated by the Attorney General to approve wiretap applications through Attorney General Order No. 931–81 of January 19, 1981. The application was supported by a 65-page affidavit by DEA Special Agent Albert Reilly detailing the steps that had been taken to try to obtain evidence through normal investigative techniques and explaining why such efforts had been and were likely to continue being unsuccessful. The application was granted by the district court.

A second application was made on May 13, 1983 to a different district judge requesting authorization to extend the original wiretap for an additional 30 days as well as to expand the investigation by installing an oral interception device in Bobby O's Villa, intercepting two more telephones at Boston locations, and listening to conversations involving a number of named suspects including appellant. Some of these, appellant among them, were being investigated in relation to an illegal gambling business, subsidiary to the narcotics operation, the existence of which had been discovered through conversations intercepted in the original wiretap.

As in the previous request, the second application recited approval by Assistant Attorney General Jensen. Attorney General Order No. 931–81 was again referred to. The application was supported by a 68-page affidavit from Special Agent Reilly referring to and incorporating his previous affidavit and also relying on some of the evidence obtained through the first wiretap, and by a shorter affidavit from Boston Police Detective Francis Dewan. Both agents declared that they believed normal investigative techniques would not be successful in dealing with the Sullivan organization. The district court also allowed this application.

On the basis of the wiretap evidence obtained, appellant and 15 other persons were charged with drug and illegal gambling offenses. Appellant was charged with violations of 18 U.S.C. § 1955 for his

---

* Of the Third Circuit, sitting by designation.

alleged participation in the gambling aspect of the operation. On December 22, 1983, appellant moved to suppress the contents of the tapes made by the government from the intercepted conversations. The government opposed the motion, filing an affidavit by Frederick D. Hess, Director of the Office of Enforcement Operations of the Criminal Division of the United States Justice Department, who explained government policies with respect to requests for electronic surveillance. Appellant then requested an evidentiary hearing on whether the applications had been sufficiently reviewed by Assistant Attorney General Jensen before approving them.

Appellant's motion to suppress was for the most part [1] denied by the district court, which also denied appellant's request for an evidentiary hearing. The jury later found appellant guilty of the charged offenses.

Appellant now challenges the district court's denial of his motion to suppress on several grounds.

Appellant argues first that the district court erred in denying his request for an evidentiary hearing on the question whether Assistant Attorney General Jensen had adequately reviewed the wiretapping applications before authorizing them or whether, in effect, he "delegated this non-delegable obligation to others." Appellant contends that Assistant Attorney General Jensen was obliged under Title III of the Omnibus Crime Control and Safe Streets Act of 1968, 18 U.S.C. § 2516(1),[2] to review personally and adequately any wiretap application before authorizing it. Given Frederick Hess's declaration,[3] appellant insists that the presumption of regularity normally accorded to authorization orders could provide no basis for refusing an evidentiary hearing at which to determine if Jensen's subordinates, rather than himself, had conducted most or all of the review.

Under 18 U.S.C. § 2516(1),

> The Attorney General, ... or any Assistant Attorney General specially designated by the Attorney General, may authorize an application to a Federal judge of competent jurisdiction for ... an order authorizing or approving the interception of wire or oral communications by the

1. The district court ordered the suppression of the evidence of illegal gambling that had been obtained through the first wiretap application and order insofar as this evidence had not been referred to in the affidavits supporting the second application and thus not been considered by the court. It also ordered the suppression of all communications regarding gambling obtained at one of the telephones intercepted by virtue of the second application as to which the authorization to intercept had been limited to drug offenses.

2. This section provides in part,

> The Attorney General, Deputy Attorney General, Associate Attorney General, or any Assistant Attorney General specially designated by the Attorney General, may authorize an application to a Federal judge of competent jurisdiction for, and such judge may grant in conformity with section 2518 of this chapter an order authorizing or approving the interception of wire or oral communications by the Federal Bureau of Investigation, or a Federal agency having responsibility for the investigation of the offense as to which the application is made, when such interception may provide or has provided evidence of—
> ....

> (c) any offense which is punishable under the following sections of this title: ... section 1955 (prohibition of business enterprises of gambling)...

18 U.S.C. § 2516(1). The Deputy Attorney General and Associate Attorney General were included among the officials capable of authorizing a wiretap application by an amendment adopted after the applications involved in this case. *See* Pub.L. No. 98–473, 98 Stat. 2152 (1984).

3. In his affidavit Hess testified that the applications were normally reviewed first by supervisory personnel in the agency conducting the investigation and then by members of his office who forwarded it to the Assistant Attorney General with a recommendation contained in a short memorandum. Hess also testified that during fiscal year 1983, 359 applications were approved by the Assistant Attorney General upon recommendation of the Office of Enforcement Operations headed by him. These applications were usually accompanied by supporting affidavits averaging between 30 and 50 pages in length, prompting appellant's contention that "[i]f [the Assistant Attorney General] had read all the material submitted to him with respect to the 359 applications he considered, it is doubtful he would have had time for any other duties."

Federal Bureau of Investigation, or a Federal agency having responsibility for the investigation of the offense as to which the application is made. . . .

Interpreting this provision in *United States v. Giordano,* 416 U.S. 505, 94 S.Ct. 1820, 40 L.Ed.2d 341 (1974), the Supreme Court held that the power *to authorize* wiretap applications could not be delegated to anyone other than the designated officials. The Court observed that it had been Congress's intention that this authority be not only narrowly confined but also limited to those, such as the Attorney General, responsive to the political process. *Id.* at 520, 94 S.Ct. at 1829. Under this design, "[t]he mature judgment of a particular, responsible Department of Justice official is interposed as a critical precondition to any judicial order." *Id.* at 515–16, 94 S.Ct. at 1826–27.

█ Appellant seizes on the latter language to argue that the Assistant Attorney General is under an enforceable duty to review personally and in depth any application and its supporting materials, since only by so doing can he be said to exercise his "mature judgment." But we do not think the district court erred in refusing to second-guess the adequacy of the Assistant Attorney General's examination procedure and thought processes. In insisting that only certain senior officials could authorize a wiretap, Congress did not go on to prescribe the methods they should use to satisfy themselves that a wiretap was in order. Nowhere did Congress forbid them the assistance of subordinates in reviewing the application. Other courts have uniformly held that once the proper official is found to have authorized a wiretap application, his authorization is not subject to further judicial review. *See United States v. Todisco,* 667 F.2d 255, 259 (2d Cir.), *cert. denied,* 455 U.S. 906, 102 S.Ct. 1250, 1251, 71 L.Ed.2d 444 (1982); *United States v. Bailey,* 607 F.2d 237, 241 (9th Cir.1979), *cert. denied,* 445 U.S. 934, 100 S.Ct. 1327, 63 L.Ed.2d 769 (1980); *United States v. Santora,* 600 F.2d 1317, 1319–20 (9th Cir. 1979); *United States v. McCoy,* 539 F.2d 1050, 1054 (5th Cir.1976); *United States ex rel. Machi v. United States Department of*

*Probation and Parole,* 536 F.2d 179, 184 (7th Cir.1976); *United States v. Feldman,* 535 F.2d 1175, 1180–81 (9th Cir.), *cert. denied,* 429 U.S. 940, 97 S.Ct. 354, 50 L.Ed.2d 309 (1976); *United States v. Turner,* 528 F.2d 143, 150–51 (9th Cir.), *cert. denied,* 423 U.S. 996, 96 S.Ct. 426, 45 L.Ed.2d 371 (1975) and 429 U.S. 837, 97 S.Ct. 105, 50 L.Ed.2d 103 (1976). *See also United States v. Williams,* 565 F.Supp. 353, 369 (N.D.Ill.1983) (collecting cases). As the Ninth Circuit said,

> Once a proper authorizing officer is properly identified, . . . thereby fixing on him the responsibility for a particular authorization, the basis on which, or the method by which, he gave the authorization is not, in our judgment, subject to review for compliance with § 2516(1). Rather it is to be presumed that the officer has properly exercised the judgment called for by the statute when he affixes his signature to an order authorizing the application.

*United States v. Turner,* 528 F.2d at 151.

█ This court has said that an authorization bearing the signature of one of the statutorily designated officials is "entitled to the greatest deference." *United States v. Smith,* 726 F.2d 852, 859 (1st Cir.1984). *Cf. United States v. Acon,* 403 F.Supp. 1189, 1195 (W.D.Pa.1975) (denying motion for discovery and oral testimony against Attorney General and former Assistant Attorney General). We accordingly sustain the district court's refusal to hold an evidentiary inquiry into the sufficiency of the Assistant Attorney General's review of the application.

█ Appellant next contends that Assistant Attorney General Jensen was never "specially designated" by the Attorney General as required by section 2516(1). *See* note 2, *supra.* The wiretap applications refer to Attorney General Order No. 931–81 of January 19, 1981 as the source of Assistant Attorney General Jensen's power to authorize applications. This order, issued by then Attorney General Benjamin R. Civiletti designated, among others, "the

Assistant Attorney General in charge of the Criminal Division ... to exercise the power conferred by Section 2516 of Title 18, United States Code, to authorize applications to a Federal judge of competent jurisdiction for orders authorizing the interception of wire or oral communications ...." After Civiletti's departure, Attorney General Order No. 931–81 was continued in effect by Attorney General Order No. 934–81 of February 27, 1981 providing that "Attorney General Order No. 931–81 remains in effect." This new order was issued by Attorney General William French Smith who was still in office when the applications in question were authorized by D. Lowell Jensen, the then Assistant Attorney General of the Criminal Division. Mr. Jensen had been appointed to this office, and his appointment was approved by the Senate, some time after issuance of both Attorney General Order No. 931–81 and Attorney General Order No. 934–81. Appellant contends that the designation was ineffective as to Jensen because the orders could not have referred to him. We disagree.

We have just rejected much the same argument in *United States v. Bynum,* 763 F.2d 474, 475–476 (1st Cir.1985). Here no more than in *Bynum* are we troubled by the fact that the particular Assistant Attorney General assumed office after the Attorney General's order. Attorney General Smith's continuing designation of "the Assistant Attorney General in charge of the Criminal Division" subsumed individuals afterwards appointed. No purpose would be served by reading section 2516(1) so as to require the making of a new designation each time a different person came to occupy the relevant Assistant Attorney General slot. That Attorney General Smith intended to specially designate Mr. Jensen is entirely clear. *See United States v. Camp,* 723 F.2d 741 (9th Cir.1984).

Appellant contends that it was illegal for the district court, in the second wiretap order, to enlarge the investigation so as to allow the DEA to investigate gambling as well as drug offenses. He points out that section 2516(1) of 18 U.S.C. permits a federal judge to authorize the interception of wire or oral communications by "the Federal Bureau of Investigation, or a Federal agency having responsibility for the investigation of the offense as to which the application is made." As the DEA's designated investigatory powers and duties are in the area of illicit drug activities, *see* 28 C.F.R. §§ 0.100 *et seq.,* appellant argues that the granting of a wiretap application permitting DEA agents to investigate illegal gambling was improper. We disagree.

■ In the circumstances of this case, the DEA may and should, as a practical matter, be viewed as "a Federal agency having responsibility for the investigation" of *these* particular gambling offenses. These gambling offenses were brought to light during the DEA's investigation of the drug activities of the Sullivan organization. Many of the same people, including defendant, were suspected of involvement in both types of offenses. As DEA agents are empowered to make arrests for "any felony, cognizable under the laws of the United States," 21 U.S.C. § 878(3)(B), it was reasonable, when they learned of the other illegal conduct, to enlarge their ongoing investigation to include that conduct rather than to go to the trouble and expense of calling in another agency. We do not think Congress meant the DEA to blind itself to criminal misconduct outside its particular field of inquiry when encountered incident to a regular investigation. Nor did Congress intend that another agency necessarily be brought into an investigation already under way where to do so might only be duplicative and inefficient. Quite the contrary, the legislative history suggests a strong congressional concern that section 2516(1) *not* be read so as to immunize lawbreakers whose crimes fortuitously fall outside a particular agency's parameters:

> The order of authorization may permit the Federal Bureau of Investigation or the Federal agency having responsibility for the investigation of the offense in-

volved to intercept the wire or oral communication. The Department of Justice under the leadership of the Attorney General must be the central focal point of any drive against organized crime, particularly in the collection, analysis, and dissemination of information. It is appropriate that no limitation be placed on the investigations in which the investigative arm of the Department may participate. Organized crime has not limited itself to the commission of any particular offense. No limitation should be placed on the Department of Justice.

S.Rep. No. 1097, 90th Cong., 2d Sess. 97, *reprinted in* 1968 U.S.Code Cong. & Ad. News 2112, 2186. *Compare United States v. Harvey*, 560 F.Supp. 1040, 1049–50 (S.D. Fla.1982) (upholding wiretap order allowing FBI to investigate drug offenses together with other offenses within the FBI's jurisdiction).

■ Finally, appellant claims that the wiretap orders failed because the government did not demonstrate that normal investigative techniques had been tried and had failed or reasonably appeared to be unlikely to succeed if tried, as required by 18 U.S.C. § 2518(3)(c).[4] Our review of the application is limited to determining "whether the facts which it sets forth are 'minimally adequate' to support the findings made by the issuing judge." *United States v. Smith*, 726 F.2d at 864. *See also United States v. Bynum*, 763 F.2d at 474; *United States v. Southard*, 700 F.2d 1, 28 (1st Cir.1983); *United States v. Scibelli*, 549 F.2d 222, 226 (1st Cir.1977). After reviewing the supporting affidavits of DEA Special Agent Reilly and Boston Police Detective Dewan, we have little trouble concluding that the order was sufficiently supported. These affidavits describe in detail previous unsuccessful attempts to obtain evidence against the Sullivan organization by conventional methods, such as covert surveillance or undercover agents, explaining that live witnesses were difficult to obtain because of the danger of violence by Sullivan or his associates and that search warrants were also not helpful because they would not have led to the identification of all the members of the conspiracy. The affidavit of Special Agent Reilly, moreover, referred to and incorporated the contents of his previous affidavit in support of the original wiretap application. This supplied some additional facts about the difficulties encountered in the investigation.

Appellant relies on *United States v. Santora*, 583 F.2d 453 (9th Cir.), *vacated on other grounds*, 441 U.S. 939, 99 S.Ct. 2155, 60 L.Ed.2d 1041 (1979), to argue that the government could not rely on statements made chiefly in support of its application regarding the narcotics investigation to obtain a wiretap order to investigate gambling. That case is distinguishable, however. There, the government sought to expand a wiretap order, relying for this on the affidavit filed in support of its original application, to intercept five additional telephones belonging to individuals not previously named in the first application. The court ordered the suppression of the evidence obtained holding that the government had failed to show that normal investigative techniques would have been unlikely to uncover the activities of the other alleged conspirators whose telephones were tapped under the second intercept order. *Id.* at 467.

Here, by contrast, most of the persons named in the wiretap application with respect to the illegal gambling (including appellant) were also named with respect to

---

**4.** This section provides:

Upon such application the judge may enter an ex parte order, as requested or as modified, authorizing or approving interception of wire or oral communications within the territorial jurisdiction of the court in which the judge is sitting, if the judge determines on the basis of the facts submitted by the applicant that—

. . . .

(c) normal investigative procedures have been tried and have failed or reasonably appear to be unlikely to succeed if tried or to be too dangerous. . . .

18 U.S.C. § 2518(3)(c).

the narcotics conspiracy. More important, authorization to intercept appellant's conversations relating to illegal gambling was granted with respect to the two telephones located at Bobby O's Villa, subject of the first wiretap order.[5] Justification for permitting wiretaps of these two telephones with regard to the narcotics investigation of a group of named suspects applied with equal force to a similar application to investigate illegal gambling activities by essentially the same group of persons. As noted above, the gambling and drug operations were closely interconnected, being carried out by a single criminal organization. The impracticality of conventional methods of investigation against this organization was well documented by the supporting affidavits.

· *Affirmed.*

**5.** The two other telephones added by the second application were also said to be used by members of the Sullivan organization named in the original application.